**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BEN ANDERSON and CURBY** | ) | |
| **HOWARD, individually, and on behalf** | ) | |
| **of all others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **Case No. 09 C 1733** |
| **vs.** | ) | |
| | ) | **Judge Joan H. Lefkow** |
| | ) | |
| **JCG INDUSTRIES, INC., KOCH** | ) | |
| **MEAT CO., INC., and JOSEPH C.** | ) | |
| **GRENDYS, individually** | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

Plaintiffs, Ben Anderson ("Anderson") and Curby Howard ("Howard") (together, "plaintiffs"), individually, and on behalf of all others similarly situated, brought this action against defendants, JCG Industries, Inc. ("JCG"), Koch Meat Co., Inc. ("Koch"), and Joseph C. Grendys ("Grendys") (together, "defendants"), as a class action for violation of the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. § 105 *et seq.* (Count I), and, individually, for violation of the Fair Labor Standards Act ("FLSA"), codified at 29 U.S.C. § 201 *et seq.* (Count II). Defendants have moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and Rule 12(b)(6). For the reasons discussed herein, defendants' motion [#8] is granted in part and denied in part.

## BACKGROUND

Anderson and Howard are residents of Cook County, Illinois and worked for JCG and Koch, two Illinois corporations that operate poultry processing plants.  Grendys is the president of both corporations and responsible for their pay practices.  Plaintiffs worked as poultry processors and seek to represent other employees who worked in similar positions for JCG and Koch and shared similar job titles, pay plans, job descriptions, job duties, uniforms and hours of work.  The defendants managed the plaintiffs' work and controlled their wage and hour compensation policies.  The plaintiffs were hourly, non-exempt employees and were paid hourly rates between $7.00 and $12.00 per hour.

JCG and Koch employees were required to work five to seven days per week.  The first shift was scheduled from 6:00 am to 2:30 pm and the second shift was from 3:00 pm to 11:30 pm; each employee had a scheduled unpaid thirty-minute meal break.  Employees were provided with time cards to keep track of time worked and were required to swipe in when they arrived at work and swipe out as they left the production floor.  Instead of requiring employees to swipe in and out for meal breaks, the defendants automatically deducted thirty minutes for meal breaks, regardless of whether the entire break was taken.  If employees were more than one minute late to the production floor, they were docked pay for fifteen minutes or more.

Plaintiffs allege they regularly worked more than forty hours per week without proper overtime compensation by working before the start of their shifts, through unpaid meal breaks, and after their scheduled shifts.  Plaintiffs allege defendants were aware that employees routinely worked more than forty hours per week but failed to accurately record the hours employees worked or properly pay them overtime.

Plaintiffs and defendants were subject to a collective bargaining agreement ("CBA").

Collective Bargaining Agreement, attached as Ex. B to Ex. 1 to Defs.' Mem.  Article V of the

CBA provides for the calculation of hours worked, including overtime, and Article IX provides

an approved grievance procedure.  *Id.* at Arts. V, IX.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the

court's subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The burden of proof is on the party

asserting jurisdiction.  *United Phosphorus, Ltd*. v. *Angus Chem. Co*., 322 F.3d 942, 946 (7th Cir.

2003).  In determining whether subject matter jurisdiction exists, the court must accept all well-

pleaded facts alleged in the complaint and draw all reasonable inferences from those facts in the

plaintiff's favor.  *Sapperstein* v. *Hager*, 188 F.3d 852, 855 (7th Cir. 1999).  "Where evidence

pertinent to subject matter jurisdiction has been submitted, however, 'the district court may

properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in

fact subject matter jurisdiction exists."  *Id.* (quoting *United Transp. Union* v. *Gateway W. Ry.*

*Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996)) (internal citations omitted).

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a

claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp*. v.

*Lease Resolution Corp*., 128 F.3d 1074, 1080 (7th Cir. 1997).  For the purposes of a Rule

12(b)(6) motion, the court takes as true all well-pleaded facts in plaintiff's complaint and draws

all reasonable inferences in the plaintiff's favor.  *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977

(7th Cir. 1999).  "A copy of any written instrument which is an exhibit to a pleading is a part

thereof for all purposes."  Fed. R. Civ. P. 10(c); *Centers* v. *Centennial Mortgage, Inc*., 398 F.3d

930, 933 (7th Cir. 2005).  Factual allegations must, however, be "enough to raise a right to relief

3

above the speculative level." *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct.

1955, 167 L. Ed. 2d 929 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure

§ 1216, at 235-236 (3d ed. 2004)); *see also Ashcroft* v. *Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1953,

173 L. Ed. 2d 868 (2009) ("*Twombly* expounded the pleading standard for all civil actions . . . ."

(internal quotation marks omitted)).  Thus, "[t]o survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.*

## DISCUSSION

### I.    IMWL Claim

Defendants brought this motion to dismiss under Rule 12(b)(1) or alternatively Rule

12(b)(6).  In Count I of the complaint, plaintiffs allege a violation of the IMWL, claiming that

defendants "regularly and repeatedly fail[ed] to properly compensate Plaintiffs . . . for the actual

time they worked each week," as well as "willfully failed to pay overtime pay and other

benefits."  Compl. ¶¶ 32, 33.  Defendants claim that Count I relates to unpaid wages which "fall

squarely within the purview of the [CBA]" and therefore is preempted by Section 301 of the

Labor Management Relations Act ("LMRA").  Defs.' Mem. at 5.  If preempted, the claim would

have to be brought under the LMRA, which requires employees to exhaust grievance and

arbitration remedies provided in the collective bargaining agreement before filing suit.  *Atchley*

v. *Heritage Cable Vision Assocs.*, 101 F.3d 495, 501 (7th Cir. 1996).

Section 301 of the LMRA completely preempts state claims where a dispute between an

employer and labor organization requires interpretation of a collective bargaining agreement's

terms. *Id.* at 499.  The statute "confers federal court jurisdiction over disputes that arise out of

collective bargaining agreements" and "preempts state law claims that touch on its subject

matter." *Lopez* v. *Smurfit-Stone Container Corp.*, No. 02 c 7347, 2003 WL 297533, at *2 (N.D.

Ill. Feb. 10, 2003).  Claims founded on rights created by a collective bargaining agreement or

that are dependent on and require analysis of the collective bargaining agreement are preempted.

*In re Bentz Metal Prods. Co., Inc.*, 253 F.3d 283, 286 (7th Cir. 2001) (citing *Caterpillar Inc.* v.

*Williams*, 482 U.S. 386, 394, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987)).  Even where the

plaintiff does not refer to the LMRA in the complaint, Section 301 may still displace a state

cause of action. *Atchley*, 101 F.3d at 498.

   Not all state claims are preempted.  Instead, preemption is determined on a case by case

basis. *In re Bentz*, 253 F.3d at 285.  Where the state law claim has its roots in a specific clause

of a collective bargaining agreement, the complaint arises under federal law.[1]  *Atchley*, 101 F.3d

at 499 (quoting *Caterpillar Inc.*, 482 U.S. at 394).  Where resolution of the claim is "inextricably

bound up with the terms of the collective bargaining agreement," interpretation of the collective

bargaining agreement by the court is inevitable and the state claim is preempted by the LMRA.

*Gelb* v. *Air Con Refrigeration & Heating*, 826 N.E.2d 391, 399, 356 Ill. App. 3d 686, 292 Ill.

Dec. 250 (Ill. App. Ct. 2005).  The Seventh Circuit has specifically held that where the

entitlement to wages or the amount due is at issue, the collective bargaining agreement controls

and preemption applies. *In re Bentz*, 253 F.3d at 289.  But where the claim merely references the

collective bargaining agreement, it is not preempted by federal labor law. *Lopez*, 2003 WL

---

[1] In *Atchley*, the union filed a grievance against the employer alleging failure to pay wage increases and bonuses as agreed to by the parties in the ratified collective bargaining agreement. *Atchley*, 101 F.3d at 497.  The claim arose from the collective bargaining agreement because the agreement specifically provided for the timing of the payment of wage increases and bonuses. *Id.* at 500.  The Seventh Circuit found that determining the payment date required interpreting the collective bargaining agreement, thus "putting [the agreement] squarely within the completely preemptive effect of § 301." *Id.* at 502.

297533, at *2 (citing *Livadas* v. *Bradshaw*, 512 U.S. 107, 124, 114 S. Ct. 2068, 129 L. Ed. 2d 93

(1994); *In re Bentz*, 253 F.3d at 285).

Here, plaintiffs argue that Section 301 does not govern their claim because the right to

overtime pay for hours worked over forty is not created by the CBA and therefore interpretation

of the CBA is not required.  Pls.' Resp. at 4-6.  Plaintiffs cite *Gonzalez* v. *Farmington Foods,*

*Inc.*, 296 F. Supp. 2d 912 (N.D. Ill. 2003), for support, but their reliance on this case is

unpersuasive.  In *Gonzalez*, the employees sought to recover overtime pay for time spent

donning and doffing equipment, sharpening knives, cleaning equipment, on meal breaks, and

before and after line operations, alleging that the defendant failed to accurately record wages and

hours worked.  *Id.* at 915-16.  The court held the state claim was preempted by Section 301

because it depended on and would require interpretation of rights created not by state law, but by

the collective bargaining agreement.  *Id.* at 935-36.

Plaintiffs are correct in pointing out that their right to time-and-one-half for overtime is

not created by the CBA but is instead a right guaranteed by statute to Illinois workers.  The CBA

in this case, however, does provide additional clauses relating to overtime pay that are not

guaranteed under state or federal law.  For example, the CBA provides that employees will

receive overtime pay double the regular rate for time worked on Sundays.  Just as in *Gonzalez*,

this right to overtime pay of more than time-and-one-half on Sundays is a specific right created

by the CBA and not granted by state or federal law.  Interpretation of the CBA is necessary to

determine whether overtime pay was properly recorded and paid pursuant to the CBA's overtime

provisions.  Therefore, contrary to plaintiffs' arguments, *Gonzalez* supports preemption in this

case.

Defendants argue that Section 301 preempts plaintiffs' IMWL claim and cite to *Gelb* for support.  In *Gelb*, employees alleged that their employers had violated the IMWL by failing to pay time-and-one-half for overtime hours worked.  *Gelb*, 826 N.E. 2d at 396.  The employees argued that interpretation of the collective bargaining agreement was unnecessary and that only an examination of the relevant payroll records and a reading of the law was needed to resolve the claim.  *Id.* at 398.  The employers argued that "the means by which they paid overtime wages were governed by the collective bargaining agreement," therefore preempting the claim.  *Id*.  Specifically, the collective bargaining agreement stated regular overtime pay for the first four hours of overtime and after that, as well as on holidays, employees would receive double the regular rate.  *Id.* at 399.  Because the formula to calculate overtime was included in the collective bargaining agreement and because the agreement "provided for overtime compensation that, in some instances, exceeded the minimum rate" under the IMWL, the court found the claims were preempted by federal labor laws.  *Id.* at 399.

Preemption is especially appropriate where the collective bargaining agreement requires overtime pay of more than what the IMWL minimally requires.  *Freundt* v. *Allied Tube & Conduit Corp.*, No. 06 C 2210, 2007 WL 4219417, at *5 (N.D. Ill. Nov. 29, 2007).  The IMWL provides that overtime pay will be time and one half for all hours worked over forty.  Section 2 of Article V of the CBA resembles the IMWL and provides that employees are to be paid one and one half times their hourly rate for overtime.  However, just as in *Gelb* and *Freundt*, the CBA provides for overtime pay that exceeds the rate mandated by the IMWL.  Sections 5 and 6 of Article V specifically outline the method for calculating overtime and the applicable rates, similar to those in *Gelb*.  Specifically, Section 6 provides that employees be paid double their regular pay for overtime worked on Sundays.  Clearly, this right is one derived solely from the

7

CBA, making preemption proper.  Furthermore, the CBA contains provisions pertaining to time

paid for the donning and doffing of clothing as well as paid and unpaid breaks.  An analysis of

these additional provisions may also be required to determine whether overtime was properly

paid.  Because the claim rests upon rights created by the CBA and calculating the amount of

overtime will require more than mere reference to the CBA, the plaintiffs' IMWL claim is

preempted by Section 301 of the LMRA.  As such, Count I will be dismissed.

## II.     FLSA Claim

In Count II, plaintiffs, in addition to several others who have filed opt-in consent forms,

assert claims against the defendants for unpaid overtime wages in violation of the FLSA,

alleging they "were not paid for all hours worked in excess of 40 in a week."  Compl. ¶ 41.  The

FLSA was intended to grant "specific minimum protections to *individual* workers" and ensure

those employees covered would receive a fair day's pay as well as be protected from overwork

and underpayment.  *Barrentine* v. *Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739, 101 S.

Ct. 1437, 67 L. Ed. 2d 641 (1981).  Section 16(b) of the FLSA permits an "aggrieved employee

to bring his statutory wage and hour claim[s] 'in any Federal or State court.'"  *Id.* at 740.  The

FLSA does not contain an exhaustion requirement.  *Id.*  In fact, the Supreme Court has held that

"FLSA rights take precedence over conflicting provisions" of a collective bargaining agreement

as individual FLSA rights may not be abridged or waived.  *Id.* at 740-41.

Plaintiffs cite to *Barrentine* as supporting this court's jurisdiction over their FLSA claim.

In *Barrentine*, the plaintiffs sought overtime for pre-trip inspections and transportation time

under the FLSA despite the fact that an arbitration board had ruled against them.  *Id.* at 730-32.

The defendants argued the FLSA claim was governed by the collective bargaining agreement

and barred by the arbitration board's prior decision.  *Id.* at 736.  They claimed that the dispute

was over wages and hours, an issue at the heart of the collective bargaining process. *Id.* at 738.

The Court reasoned, however, that not all disputes between an employee and employer should be

resolved in accordance with the collective bargaining agreement's procedures, as "different

considerations apply where the employee's claim is based on rights arising out of a statute

designed to provide minimum substantive guarantees to individual workers." *Id.* at 737.

Because the FLSA is designed to protect individual workers and contain rights independent of

the collective bargaining process that are "best protected in a judicial rather than in an arbitral

forum," the Court ruled that the employees' FLSA claim was not barred. *Id.* at 745.  Although

defendants in the present case argue *Barrentine* does not apply, claiming the issue was whether

an employee could bring an FLSA action after it had unsuccessfully exhausted grievance

procedures,[2] the Supreme Court specifically noted that its "holding does not depend on whether

petitioners formally filed grievances." *Id.* at 732 n.6.

Defendants argue that federal labor law requires plaintiffs to exhaust the grievance

procedures under the CBA before bringing their FLSA claim in federal court.  They rely on an

exception to *Barrentine* created by the Seventh Circuit in *Leahy* v. *City of Chicago*.  96 F.3d 228

(7th Cir. 1996).  In *Leahy*, Chicago police officers sued, alleging violations of the FLSA for

failure to pay them overtime for their meal periods. *Id.* at 230.  Because provisions within the

collective bargaining agreement specifically guaranteed overtime pay for time worked in excess

of eight hours in an eight-and-one-half hour work day as well as specifically defined

compensable work, the agreement was found to fully protect the police officers' FLSA rights.

*Id.* at 232.  Therefore, the dispute could adequately be resolved under the grievance procedures

provided by the collective bargaining agreement. *Id.*  The Seventh Circuit reasoned that "as long

---

[2]In the present case, plaintiffs did not submit grievances pursuant to the CBA prior to filing their claims.

as a collective bargaining agreement comports with the FLSA," the grievance procedure outlined in the agreement should be used first. *Id.*

However, courts in this district have rejected a broad reading of *Leahy*, finding that it only applies to those situations where compensable work is defined specifically within the collective bargaining agreement. *See Belbis* v. *County of Cook*, No. 01 C 6119, 2002 WL 31600048, at *3 (N.D. Ill. Nov. 18, 2002); *Schwertfeger* v. *Village of Sauk Village*, No. 99 C 6456, 2001 WL 293115, at *3 (N.D. Ill. Mar. 23, 2001). These courts have held that, when the work is not clearly compensable under the collective bargaining agreement, *Barrentine* protects employees' right to bring their FLSA claims in federal court before first exhausting the CBA's grievance procedure. *Belbis*, 2002 WL 31600048, at *3; *Schwertfeger*, 2001 WL 293115, at *3. In *Belbis*, the plaintiffs sought compensation for work performed before and after their shift. *Id.* at *1. Because the collective bargaining agreement did not specifically define compensable work, the court found *Leahy* did not apply and that the dispute need not be resolved through the collective bargaining agreement's grievance procedures. *Id.* at *3. Instead, the court ruled that *Barrentine* applied, as "FLSA rights are independent of the collective bargaining process" and not waivable. *Id.* at *4. Similarly, the CBA in the present case does not specifically define compensable work; therefore, plaintiffs are not required to use the CBA's grievance procedures to resolve this dispute.

In addition to *Leahy,* defendants also cite to *Freundt* for support. *Freundt,* however, can also be distinguished from this case. The plaintiff in *Freundt* alleged a FLSA violation for failure to pay overtime at one and one half the regular pay rate. *Freundt*, 2007 WL 4219417, at *1. The pay was based upon a calculation "governed by specific sections of the collective bargaining agreement." *Id.* The plaintiff claimed the defendant intentionally manipulated direct

incentive programs to limit the size of daily percentages used to calculate production bonuses. *Id.* In *Freundt*, the method of calculation was at issue, not the failure to properly record time, as in the present case. *Id.* at \*3. Because extensive analysis of the calculation method provided by the collective bargaining agreement was required to determine whether wages were correctly paid, the court ruled the dispute was appropriate for the CBA's grievance procedures. *Id.* at \*3-4. Here, plaintiffs do not allege incorrectly paid overtime requiring calculations as provided by the CBA but instead assert they were not paid for clearly compensable time. As such, the fact that plaintiffs did not exhaust the CBA's prescribed grievance procedure does not deprive this court of subject matter jurisdiction.

Alternatively, defendants have moved for dismissal under Rule 12(b)(6). Under the FLSA, employees are entitled to overtime pay for compensable hours worked over forty per week. 29 U.S.C. § 207(a). Employees who have not received the overtime they are entitled to may recover back wages in a suit against the employer. *Id.* § 216(b). Plaintiffs allege they "were not paid for all hours worked in excess of 40 in a week," entitling them to unpaid back wages. Compl. ¶¶ 41, 43. Thus, they have stated a claim upon which relief may be granted. Therefore, the 12(b)(6) motion will also be denied with regard to Count II.

## CONCLUSION AND ORDER

For the reasons discussed above, defendants' motion to dismiss [#8] is granted in part and denied in part. Count I is dismissed. Defendants have until November 17, 2009 to file an answer to Count II.

Dated: November 4, 2009                 Enter: _____

                                        JOAN HUMPHREY LEFKOW
                                        United States District Judge